MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

W.S. WILSON LEUNG (CABN 190939)
WIL FRENTZEN (LABN 24421)
CHRISTINE Y. WONG (NYBN 3988607)
Assistant United States Attorneys

THERYN G. GIBBONS (NYBN 4612867)
Trial Attorney, United States Department of Justice, Gang Unit

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-6758
   Facsimile: (415) 436-6753
   E-Mail: wilson.leung@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. S3-08-CR-0730-WHA |
| | ) | |
| v. | ) | GOVERNMENT'S RESPONSE TO DEFENDANTS' EXPERT NOTICES |
| | ) | |
| | ) | Date: February 14, 2011 |
| GUILLERMO HERRERA, et al., | ) | Time: 8:00 a.m. |
| | ) | Court: Hon. William Alsup |
| Defendants. | ) | |

Defendants have filed numerous expert notices. As set forth below, the Government seeks to preclude the proposed testimony of Dr. Deborah Davis (noticed by Angel Guevara, Docket No. 3249) and Scott Fraser (noticed by Guillermo Herrera, Docket No. 3243) because the testimony of those witnesses is unnecessary and unreliable. The Government also seeks to preclude the testimony of other expert witnesses for whom defendants provided insufficient notice.

**I.      Background**

By order dated July 15, 2010, defendants were required to provide expert disclosures, including expert reports and summaries, to the Government 35 days before trial. *See* Docket No. 1921. The Government received the following expert notices, among others:

      **A.      Jonathan Cruz-Ramirez**

Defendant Cruz-Ramirez filed an expert notice regarding the following witnesses: (a) Ginger Holman, whose testimony would be in regards to "the Juvenile files already in the possession of the Government"; (b) Dr. Antolin Llorente, a neuropsychologist, "as part of the defense case"; and (c) an unspecified expert "on the effects of cocaine, and/or street drugs sold as cocaine in the City and County of San Francisco based on drug test results already in the hands of the Government." *See* Docket No. 2946. As part of Cruz-Ramirez's submission to the Government requesting that the Government not seek the death penalty for Cruz-Ramirez, counsel for Cruz-Ramirez informed the Government that, among other things, defendant "shows signs of frontal lobe impairments, and brain dysfunction. His cognitive reasoning, based on appropriately normed testing, is no higher than the borderline intellectual functioning range–previously known as borderline mentally retarded." *See* Letter dated May 12, 2010. To date, the Government has not received any other expert report or summary regarding the testimony of Ms. Holman, Dr. Llorente, and the unspecified expert.

      **B.      Angel Guevara**

Defendant Guevara filed a notice that he would call to testify Dr. Deborah Davis, who would testify about the circumstances surrounding the witness identifications of Guevara as the perpetrator of two stabbings on the night of December 26, 2007. *See* Docket No. 3249. Defendant attached to his notice a report summarizing the testimony of Dr. Davis.

      **C.      Guillermo Herrera**

Defendant Herrera filed a notice that he would call to testify Dr. Scott Fraser, who would testify about the circumstances surrounding a witness's identification of Herrera as the shooter in the Armando Estrada homicide on July 11, 2008. *See* Docket No. 3243. The notice states that Dr. Fraser will "opine[] that scientific studies strongly suggest that [the witness's] identification

of Mr. Herrera is highly unreliable." Herrera further notified the Government that he would be presenting the expert testimony of Dr. Pablo Stewart who will testify "that Mr. Herrera suffers from substantial psychiatric issues and neuro-cognitive deficits based upon his medical evaluation of Mr. Herrera." Herrera stated that he would supplement this notice "upon resolution of pending CJA matters." To date, the Government has received no other reports or summaries of the testimony of Drs. Fraser and Stewart.

### D.     Erick Lopez

Defendant Lopez filed an expert notice stating that he would "offer expert evidence of the mental conditions from which he suffers on the issues of guilt and punishment. The evidence will consist of the testimony of neuropsychologist Antonio Puente, Ph.D. whose report [was previously tendered]." Lopez further informed the Government that "Dr. Puente will testify to the clinically significant deficits from which Mr. Lopez suffers in reasoning, learning and memory, as well as intellectual functions. Dr. Puente will testify concerning how those deficits serve to make Mr. Lopez easily manipulated and particularly susceptible to the influence of others who he perceives to be in positions of authority." *See* Letter dated January 31, 2011. Dr. Puente's report was previously provided to the Government in the context of determining whether the Government would seek the death penalty against Lopez.

### E.     Daniel Portillo

Defendant Portillo filed an expert notice stating that "he intends to introduce expert evidence relating to a mental condition bearing on the issue of guilt." *See* Docket No. 3000. He further gave notice that that defense would "involve the likely testimony of Dr. Maria T. Holden, Psy.D. and a psychiatrist or another psychologist to be named later." To date, the Government has not received any other notice or summary regarding Portillo's expert.

## II.   Argument

### A.     Expert witnesses regarding witness identification should be precluded.

Defendants Herrera and Guevara have proffered experts in the area of "eyewitness identification" and "witness memory." These witnesses offer the same essential testimony regarding the difficulty of witnesses making eyewitness identifications. Such experts have been

precluded again and again by courts in the past. The Court should preclude these proposed witnesses in this case as unscientific, irrelevant, invasive of the province of the jury, and unreliable. Furthermore, neither defendant has provided a sufficient summary of the opinions and basis for opinions that will be expressed at trial.

Defendant Guevara was identified by three separate eyewitnesses in two separate stabbing incidents, and a fourth witness indicated that Guevara resembled the person who committed the stabbing. The Court has already addressed the admissibility of those identifications. Defendant Herrera was identified as the person who committed a shooting murder. The Court has ruled on the admissibility of that identification.

Faced with eyewitnesses who identified them, defendants Guevara and Herrera seek to employ so-called "experts" to opine from the comfort of their offices about the ability of the eyewitnesses who experienced these violent actions to see what they say they saw. Such witnesses are rarely, if ever, permitted by courts to profit from their voodoo science by testifying during trial.[1]

At a time, all such testimony was banned outright as unreliable, unscientific, and invasive of the province of the jury. *United States v. Amaral*, 488 F.2d 1148 (9th Cir. 1973). After the Supreme Court decided *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), the Ninth Circuit determined that such testimony could not be prohibited without further consideration of each particular case. *United States v. Rincon*, 28 F.3d 921, 923 (9th Cir. 1994); *United States v. Hicks*, 103 F.3d 837, 847 (9th Cir. 1996), *overruled on other grounds*, ("[a]fter *Daubert* was decided, we emphasized in *Rincon* that the determination of the admissibility of expert testimony concerning eyewitness identification should be based on an individualized

---

[1] Remarkably, defendant Herrera's expert has apparently been sufficiently compensated to completely overstep the pretense of science to offer the opinion that the witness's "identification of Mr. Herrera is highly unreliable." Def. Herrera's Notice of Expert Witness Testimony, at 3. Rather than the usual bland discussion of "factors" affecting identification and memory, Dr. Scott Fraser intends to inject his own opinion regarding the "reliability" of another witness's identification. This is completely uninformed, unscientific, and by trying to do too much the expert accomplishes only to demonstrate his own lack of reliability.

1  inquiry, rather than strict application of the past rule that summarily excluded such testimony").
2  In *Rincon* and in *Hicks*, however, the Ninth Circuit upheld the decision by the trial court to
3  preclude expert testimony in the area of eyewitness identification after the trial court had
4  considered *Daubert*. The basis of the trial court to exclude the testimony in *Rincon* was as
5  follows: "1. The proposed testimony invades the province of the jury (i.e., it does not assist the
6  trier of fact); 2. No showing has been made that the testimony relates to an area that is
7  recognized as a science; and 3. The testimony is likely to confuse the jury." *Rincon*, 28 F.3d at
8  923.

9        Upon reviewing the findings by the trial court in *Rincon*, the Ninth Circuit held that its
10 review was for an abuse of discretion: "[w]e review for abuse of discretion the district court's
11 decision regarding the admissibility of expert testimony on the reliability of eyewitness
12 identifications." *Id.* (citing *United States v. Almador-Galvan*, 9 F.3d 1414, 1417 (9th Cir. 1993)).
13 The Ninth Circuit then went on to agree with the findings made by the trial court that the
14 testimony was not of assistance to the jury, unscientific, and likely to confuse and mislead the
15 jury. *Id.* at 924-25. In *Hicks*, the trial court received information from the defendant regarding
16 the proposed expert testimony pursuant to *Daubert*. *Hicks*, 103 F.3d at 847. Again, the trial
17 court excluded the testimony finding it inappropriate under Fed. R. Evid. 403, even if it were
18 accepted as scientific knowledge. *Id.* The trial court found: "I do not believe it will materially
19 assist the trier of fact more than other traditional methods of challenging eyewitness
20 identification. And I conclude that it is likely to confuse or mislead the jury, and frankly, waste
21 our time at the trial. The same information can be conveyed through cross-examination and in an
22 appropriate comprehensive jury instruction." *Id.* The Ninth Circuit agreed and upheld the trial
23 court's decision in *Hicks*. *Id.*

24       Here, similar to *Rincon* and *Hicks*, neither defendant Guevara nor defendant Herrera can
25 meet their burden to show the admissibility of the proffered testimony. Neither defendant has
26 made any showing, nor could they, that this information will assist the jury any more than the
27 jurors' own innate common sense and life-experiences. All jurors are capable of understanding
28 and considering their own life experiences in the areas of facial recognition, memory, and

incidences that take place over a short period of time. They do not need an expert for any of that.

Defendants have made no showing, nor could they, that this is an area of actual science. Instead, this is a cottage industry predicated entirely on litigation and the money to be made from litigation. The Government is unaware of any recognition of these areas as actual science and the defendants have provided the Court with no information to support such testimony as scientific. As the Court is well aware, *Daubert* requires "in order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation – i.e., 'good grounds,' based on what is known." *Rincon*, at 924 (quoting *Daubert*). Several factors to consider in determining whether testimony is from "scientific knowledge" include: "(1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the particular degree of acceptance within the scientific community." *Id.* Defendants have not and cannot make this showing, and the Ninth Circuit upheld its rejection as science in *Rincon*.

Even if the testimony were potentially helpful and scientifically valid, which it is not, it remains inadmissible if it is properly excluded pursuant to Fed. R. Evid. 403. In *Rincon*, the Ninth Circuit again agreed with the trial court that this basis constituted an appropriate reason to exclude the expert in eyewitness identifications. *Id.* at 925. The Ninth Circuit upheld the finding that such testimony would prove to be confusing and misleading. *Id.* The Ninth Circuit pointed out that, along with the jurors being able to understand these concepts for themselves, the trial court gave appropriate jury instructions regarding eyewitness identifications so that the expert testimony was unnecessary. Id. The court upheld a similar finding under Fed. R. Evid. 403, and held that similar jury instructions covered the issue adequately, in *Hicks*, 103 F.3d at 847. Such instructions would be appropriate in this case.

Finally, the "opinions" provided in the Notices filed by defendants Herrera and Guevara demonstrate the lack of sufficient science to support the witnesses. Neither report indicates the bases for any opinions other than blanket assertions regarding the three steps in identification and "factors" that affect such identifications. There are no reports generated by the experts, no

rationale for their opinions, no citations to any studies, no authority for any opinions purportedly reached. The testimony should be precluded on that basis alone.

The Court should exclude such testimony. If a showing is made by the defendants sufficient to warrant a *Daubert* hearing, then such a hearing should be held prior to trial. Unlike the experts proffered by the government – such as ballistics, latent fingerprint examination, and other forensic sciences, with decades of historical scientific basis – this is an area that is typically rejected from admission into court, and any hearing on it should be held outside the presence of the jury.

### B. Defendants provided insufficient notice of their expert witnesses.

#### 1. Experts on mental condition

Herrera and Portillo have provided the barest disclosures regarding their respective mental health experts. Neither defendant even identifies what the mental condition each defendant suffers from, much less what impact the mental condition has on the determination of guilt. The Government respectfully requests that the Court preclude the testimony of these experts, as the defendant's disclosure deadline has passed. In the alternative, the Government reserves the right to make a *Daubert* challenge, or any other objection, if and when it receives additional information.[2]

Cruz-Ramirez's notice is similarly devoid of detail. To the extent that he is relying upon his May 2010 letter to the Government regarding the application of the death penalty, that letter does not attribute specific opinions to specific experts. Accordingly, the Government also respectfully requests that the Court preclude the testimony of Ms. Holman and Dr. Llorente. The Government reserves the right to make further challenges if and when it receives additional information.

Lopez was the sole defendant to actually provide an expert report for his mental condition

---

[2] If the Court precludes, with prejudice, the testimony of defendants' mental condition experts due to lack of notice, the Government will not have its expert examine those defendants. In the meantime, the Government will continue to make arrangements for its expert to conduct the examinations of those defendants.

expert. In that report, Dr. Puente concludes that Lopez "has clinically significant deficits, especially in reasoning, learning and memory as well as intellection functions," and has "intellectual functions . . . in the mild retardation range." Lopez's report is nonetheless insufficient as it fails to specify how the defendant's mental condition has any bearing on the issue of guilt.

### 2. Cruz-Ramirez's unspecified expert

The Government has received no information about Cruz-Ramirez's noticed expert regarding the effects of various drugs. The Government objects on the basis that the proffered testimony is completely vague, appears to be irrelevant, and the expert witness and his/her qualifications are, as yet, unidentified. Accordingly, the Government reserves the right to make a *Daubert* and/or relevance challenge once it receives additional information.

## III. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court preclude the testimony of Herrera and Guevara's eyewitness experts as being unnecessary and unreliable. The Government also respectfully requests that the Court preclude the defendants' mental condition experts and Cruz-Ramirez's expert regarding the effects of various drugs because the defendants failed to provide sufficient notice.

DATED: February 7, 2011

               Respectfully submitted,

               MELINDA HAAG
               United States Attorney

          By: /s/
             W.S. WILSON LEUNG
             WIL FRENTZEN
             CHRISTINE Y. WONG
             Assistant United States Attorneys

             THERYN G. GIBBONS
             Trial Attorney, Department of Justice