MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

W.S. WILSON LEUNG (CABN 190939)
WIL FRENTZEN (LABN 24421)
Assistant United States Attorneys

THERYN G. GIBBONS (NYBN 4612867)
Trial Attorney, United States Department of Justice, Gang Unit

    450 GoMarch 26, 2011lden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-6758
    Facsimile: (415) 436-6753
    E-Mail: wilson.leung@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. S3-CR-08-0730-WHA |
| v. | SENTENCING MEMORANDUM |
| IVAN CERNA, | |
| Defendant. | |

    The Government respectfully submits this memorandum to advise the Court that it has no objections to the factual findings or sentencing calculations set forth in the Presentence Investigation Report ("PSR") for the defendant, Ivan Cerna. After considering the defendant's effective applicable Sentencing Guidelines range (factoring in the mandatory minimum consecutive sentence for Count Four) of 228 to 270 months' imprisonment and the various factors set forth under 18 U.S.C. § 3553(a), the Government submits that a sentence of 240 months' imprisonment would be a reasonable and appropriate sentence.

## I. Applicable Law

Section 3553(a) of Title 18, United States Code provides that the sentencing "court shall impose a sentence sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth specific considerations, including: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; the defendant's need for rehabilitation; the kinds of sentences available; and the sentencing range under the Guidelines. 18 U.S.C. § 3553(a). In a single word, in light of these various factors, a criminal sentence is reviewed for "unreasonableness." United States v. Booker, 543 U.S. 220, 260-62 (2005).

Although the Supreme Court decision rendered the Sentencing Guidelines advisory, the Guidelines remain the "starting point and initial bench-mark" for sentencing. Kimbrough v. United States, 128 S. Ct. 558, 574 (2007) (internal quotation marks and citation omitted); see United States v. Carty, 520 F.3d 984, 991 (9th 2008) (*en banc*). While there is no presumption of reasonableness for a Guidelines range sentence, see Carty, 520 F.3d at 991-992, if a district judge "decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to sup port the degree of the variance." Id. (citing Gall v. United States, 128 S. Ct. 586, 597 (2007).

## II. The Defendant Should Be Sentenced To 240 Months' Imprisonment

In light of the sentencing principles set forth above, and the information that the Government has received to date, the Government respectfully submits that the defendant should be sentenced to 240 months' imprisonment.

As an initial matter, the Government does not dispute that Ivan Cerna, despite serving as the leader of MS-13's 20th Street clique in San Francisco for a number of years, was less violent than many of his co-defendants and successors, e.g., Marvin Carcamo, Angel Guevara, and Moris Flores — each of whom pushed the gang to commit more violence — Jonathan Cruz-Ramirez, Erick Lopez, and Guillermo Herrera, each of whom killed at least one person. Cerna

seemed to have a romantic notion of the gang and justified his decisions by claiming that they were in the best interests of the "*barrio*." According to the Government's cooperators, Cerna sought alliances with other *Sureño* gangs and came up with a "taxation" plan for the *nieros* that the *nieros* agreed to pay. The Government also agrees that the 20th Street clique became more bloodthirsty beginning in 2004 and 2005, when MS-13 gang members from Los Angeles and elsewhere settled into the Bay Area and sought to mode the 20th Street clique in their own image.

However, just because Cerna was less blood thirsty than other members of the gang does not mean that he was not violent. Lest the Court be mislead, Cerna advocated violence, as he admitted in his guilty plea allocation. He exhorted his "homies" (his fellow gang members) to attack and kill their arch rival *Norteños*, and he sought to better arm his gang with firearms in order to "defend" their neighborhood. Indeed, following the murder of 20th Street clique leader Guillermo Fuentes ("Memo") in 2004 — who was also one of Cerna's best friends — Cerna urged his gang to avenge Memo's slaying through violence.

Given these circumstances, a sentence at the very bottom of the applicable sentencing range would be inappropriate. Indeed, such a lenient sentence would be particularly hard to justify given Cerna's attempts to minimize his conduct to the Probation Department. For instance, Cerna — like many other defendants in this case — claimed that he became involved with MS-13 through playing soccer. Kicking a ball around with one's friends, however, is a far cry from urging them to get guns and shoot people simply for wearing red, which is what Cerna did. Likewise, Cerna reported that he was targeted by his fellow gang members for his "lack of involvement in gang activities." PSR ¶ 62. While the Government believes other members of the 20th Street clique — specifically, younger, more restive members like Jonathan Cruz-Ramirez and Walter Cruz-Zavala — did in fact discuss eliminating Cerna (as well as other older members of the gang), this fact hardly mitigates Cerna's crimes. He who lives by the sword dies by the sword, and the threats against Cerna merely confirm that he was deeply involved in MS-13 politics. The Praetorians, after all, go after caesars, not Joe Schmoes.

If the defendant disputes his role in the gang, the Government would urge the Court to continue the defendant's sentencing until after the upcoming trial of seven of the MS-13

defendants. The Government intends to present evidence during trial that will confirm what the Government outlined above regarding Cerna's role in the gang. Although Cerna was not the worst, he certainly has not earned a sentence at the bottom of his applicable sentencing range. Given the nature of the defendant's offenses and his leadership role in the gang for a relatively long period of time, a sentence of 240 months — near, but not at, the bottom of his undisputed sentencing range would be reasonable and appropriate.

### III. Conclusion

For the foregoing reasons, the Government respectfully submits that the defendant should be sentenced principally to a term of 240 months' imprisonment: 180 months for Counts One and Two, followed by the mandatory consecutive minimum sentence of 60 months for Count Four.

Dated: March 29, 2011

Respectfully submitted

MELINDA HAAG
United States Attorney

By:  /s/
W.S. Wilson Leung
Assistant United States Attorney