MARTIN A. SABELLI SBN 164772
149 Natoma, Third Floor
San Francisco, CA 94105
Tel: (415) 284-9806
Fax: (415) 520-5810

Attorney for
GUILLERMO HERRERA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. CR 08-0730 WHA |
|---|---|
| Plaintiff, | |
| vs. | **GUILLERMO HERRERA'S SECOND SUPPLEMENTAL RESPONSE TO THE GOVERNMENT'S MOTION TO ADMIT ACOSTA'S STATEMENTS TO ICE AGENTS ON JULY 11, 2008** |
| GUILLERMO HERRERA, | |
| Defendant. | |

GUILLERMO HERRERA submits a Second Supplemental Response in order to inform the Court that Roberto Acosta's "observation" of a telephonic statement does not qualify as a "startling event" under FRE 803(2). The case law does not support the notion that such an event can trigger an excited utterance and the government, as the proponent, has not cited any case law to support this theory.

The "startling event" in this case, according to the government, is a statement made by Mr. Herrera during a telephone call received by Acosta rather than an event witnessed by Acosta. The notion that *a telephone call about a startling event* can qualify as a startling event appears to be extremely unusual if not novel.

Returning to first principles, the rationale underlying the Rule is the lack of opportunity to reflect and therefore to fabricate. The well-known characteristics of Acosta are relevant to this calculus.[1] Equally as important, this Court should recall that the first statement (to the

---

[1] Acosta's exposure to violence, including personal participation in many murders, has been discussed in previous pleadings.

1

effect that "one has fallen in the Mission") differs from the second given 25 minutes later (to the effect that "I left someone shot"). The difference in the statements not only underscores the reflection which preceded the second statement (thereby making it inadmissible). The difference also reflects upon the motives and credibility of the informant preceding *the first call* (thereby making it inadmissible). Why? For the simple reason that had Acosta heard Mr. Herrera say "I shot someone" or "I left someone dead," *and had this startled Acosta as claimed by the government*, Acosta would have recalled those words and not "one has fallen in the Mission" when speaking with Agent Moore. *It defies logic that a statement startled Acosta sufficiently to qualify under the Rule and yet be forgotten moments later in the call to Agent Moore.*

In this respect, the Committee Notes to FRE 403 support the defense view that the declarant must have had first-hand knowledge:

> In a hearsay situation, the declarant is, of course, a witness, and neither this rule nor Rule 804 dispenses with the requirement of first-hand knowledge. It may appear from his statement or be inferable from circumstances.

Acosta was not a witness to the murder. Acosta therefore lacks the personal knowledge required by the Rule and his hearsay should not be admitted.

Mr. Acosta did witness a telephone call. Under the relevant circumstances (which include the characteristics of the declarant), the call could not have been startling – let alone sufficiently startling – under FRE 803(2). It could not have been startling to hear a statement from a fellow gang member (whom Acosta knew to be violent) to the effect that "one had fallen in the Mission" – particularly given that the MS/Niero war had already erupted. To be clear, witnessing a murder could have been a startling event but Acosta had no first-hand knowledge of that event.

Undersigned counsel can conceive of a situation in which hearing about a murder might theoretically be sufficiently startling under the Rule. Hearing a statement about a murder might conceivably qualify if the hearer (Acosta) had not been inured to murder and violence, the

2

GUILLERMO HERRERA'S SECOND SUPPLEMENTAL RESPONSE TO THE GOVERNMENT'S MOTION TO ADMIT STATEMENTS MADE BY ACOSTA TO ICE AGENTS ON JULY 11, 2008

description had been extremely graphic and surprising, and the involvement of the speaker (Herrera) had not been a surprise to the hearer.[2]  None of these factors exist here.

## CONCLUSION

The fact that Acosta witnessed a telephone call rather than an event should be dispositive here.  Coupled with Acosta's well-known lack of credibility and the variance in the "startling statement" – both of which are in profound tension with the purposes of FRE 803(2) – the hearsay statement should be excluded.

DATED:   August 2, 2011                              Respectfully submitted,

By:  _____/s/_____
MARTIN A. SABELLI
Attorney for GUILLERMO HERRERA

---

[2] For example, the following might qualify:  a son with no past violence calls his mother and confesses to murder.  The hearer (mother) in this scenario could very well have been startled sufficiently to qualify under FRE 803(2).  Undersigned counsel is not aware of any authority that would support this theory but it is theoretically possible.

3

GUILLERMO HERRERA'S SECOND SUPPLEMENTAL RESPONSE TO THE GOVERNMENT'S MOTION TO ADMIT STATEMENTS MADE BY ACOSTA TO ICE AGENTS ON JULY 11, 2008